PEOPLE v THOMPSON

Docket No. 51657. Submitted June 17, 1981, at Detroit.—Decided November 16, 1981.

Lewis Thompson was convicted of assault with intent to do great bodily harm less than murder, Detroit Recorder's Court, Susan D. Borman, J. He appeals by leave granted. *Held:*

1. The trial court abused its discretion in admitting evidence of a telegram without proper authentication, but reversal is not required because identification of the victim's assailant was not at issue and the error was harmless.

2. The trial court erred in admitting evidence of the defendant's prison escapee status; however, in light of the other overwhelming evidence presented, there was no reasonable possibility that exclusion of the evidence would have altered the jury's verdict.

3. The trial court properly admitted testimony by the defendant's wife. Under the circumstances of the case, her testimony was not barred by the "spousal" or "confidential communication" privilege.

4. The trial court properly admitted evidence regarding the

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence § 883.

Proof of authorship or identity of sender of telegram as prerequisite of its admission into evidence. 5 ALR3d 1018.

[3] 5 Am Jur 2d, Appeal and Error §§ 786, 803.

29 Am Jur 2d, Evidence §§ 320, 321.

[4] 81 Am Jur 2d, Witnesses § 125 *et seq.*

Crimes against spouse within exception permitting testimony by one spouse against the other in criminal prosecution. 11 ALR2d 646.

[5] 29 Am Jur 2d, Evidence §§ 451, 473.

[6] 81 Am Jur 2d, Witnesses § 569.

Admissibility, under Rule 404[b] of Federal Rules of Evidence, of evidence of other crimes, wrongs, or acts not similar to offense charged. 41 ALR Fed 497.

[7] 75 Am Jur 2d, Trial §§ 574, 577.

76 Am Jur 2d, Trial § 906.

contents of certain letters sent by the defendant to the victim. The admission did not violate the best evidence rule.

5. The trial court did not abuse its discretion in admitting evidence of the defendant's three prior convictions.

6. The record reveals that the defendant was not deprived of his right to a fair trial because of certain questions asked of him by the prosecution during cross-examination. The prosecutor was attempting to elicit relevant testimony, and the defendant's objection to the line of questioning was sustained by the trial court.

7. The trial court properly instructed the jury regarding the consideration to be given "bad acts" evidence.

Affirmed.

1. EVIDENCE — RULES OF EVIDENCE.

A condition precedent to admission of a telegram during trial is that it must be authenticated by other evidence sufficient to support a finding that the matter in question is what its proponent claims (MRE 901).

2. EVIDENCE — TELEGRAMS — RULES OF EVIDENCE.

A telegram may not be accepted into evidence as self-authenticating; however, it may be authenticated by looking to its contents and the surrounding circumstances for indications that the information contained within the telegram was uniquely within the purported sender's knowledge or that it was sent in reply to duly authenticated communications (MRE 901[4]).

3. EVIDENCE — APPEAL — SIMILAR ACTS — AUTHENTICATION — BAR — STATUTES.

Admission of evidence of a defendant's similar acts in a criminal case without proper authentication or in contravention of the similar acts statute constitutes error, but reversal on appeal is not required where the record reveals that other, overwhelming evidence was submitted which would leave no reasonable possibility that exclusion of the evidence improperly admitted would have altered the jury's verdict or where the evidence pertained to a matter which was not an issue (MCL 768.27; MSA 28.1050, MRE 404[b], 901[4]).

4. HUSBAND AND WIFE — SPOUSAL PRIVILEGE — CONFIDENTIAL COMMUNICATIONS — STATUTES.

One spouse may testify against the other without consent of the other regarding any matter which is relevant and not otherwise barred where the cause of action grows out of a personal wrong or injury done by one spouse to the other, and this exception to the spousal privilege against giving or being

compelled to give testimony against a spouse applies as well to confidential communications between spouses (MCL 600.2162; MSA 27A.2162).

5. EVIDENCE — BEST EVIDENCE RULE.

Original copies of letters threatening a complainant should be offered as the best evidence of the contents of the letters; however, where the originals have been discarded or destroyed prior to trial through neither the negligence nor bad faith of the complainant or the prosecutor, the complainant may be allowed to testify as to the contents of the letters (MRE 1002, 1004).

6. WITNESSES — IMPEACHMENT OF WITNESSES — PRIOR CONVICTIONS.

A trial court, in its discretion, may admit evidence of a defendant's prior convictions for the purpose of impeachment where the convictions are not similar to the offense charged and the trial court recognizes its discretion and determines that the probative value of the evidence outweighs its prejudicial effect.

7. TRIAL — JURY INSTRUCTIONS.

A trial court does not have a duty to give a limiting instruction to the jury absent a request for such instruction or an objection to its final charge.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *A. George Best, II,* Assistant Prosecuting Attorney, for the people.

*Judith Dennehy Doran,* for defendant on appeal.

Before: V. J. BRENNAN, P.J., and N. J. KAUFMAN and E. E. BORRADAILE,* JJ.

V. J. BRENNAN, P.J. Defendant Lewis Thompson was convicted by a Recorder's Court jury in 1976 of assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279. We granted defendant's application for delayed appeal.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Defendant was accused of assaulting his wife with a knife because she refused to smuggle drugs to him while he was incarcerated in Jackson prison. During trial, three eyewitnesses, Mrs. Bussle, Miss Monroe, and the victim's son, testified that the defendant was the assailant who stabbed the complainant in the face, slashed her in the stomach, and repeatedly hit her on the head with a table leg. The complainant-wife also testified about the attack and her wounds. She further was allowed to testify, over defense objection, that defendant had threatened, by letter and by phone, to kill her two to four months before the assault because she would not smuggle drugs into the prison. She also testified, over defense objection, that defendant escaped from Jackson prison the day before he assaulted her. Defendant's letters containing the threats were not produced during trial because complainant had destroyed them.

Defendant, testifying in his own behalf, stated that he hit the complainant with a table leg, cut her face with a knife, and stabbed her in the abdomen.

Numerous errors are alleged on appeal. Defendant objected at trial to the admission into evidence of a telegram without proper authentication and to testimony regarding defendant's attempts to convince his wife, the complainant, to smuggle drugs into Jackson prison, his subsequent death threats upon her refusal, and his escapee status at the time of his assault on her. Defendant also contends that the trial court abused its discretion by allowing the prosecution to impeach him with evidence of three prior convictions, that the prosecution's questioning of defendant about his drug use unduly prejudiced him, and that the trial court erred by not specifically mentioning the

alleged drug smuggling scheme when giving a limiting instruction regarding use of testimony of other uncharged offenses.

We find that none of these alleged errors, individually or collectively, warrants reversal.

Defendant first asserts that error was committed which requires reversal when the trial court admitted, over defense objection, a telegram purportedly sent by defendant to the victim the day after the attack.

It read as follows:

"Brenda, miss you this time but will see you as soon as you recover. Brenda, use your head and get in touch about with me just as soon as you get out of the hospital. If not I will be waiting for you the day you come home.
"Lewis"

The telegram contained the typed name "Lewis" and the defendant's mother's telephone number.

Before evidence may be admitted during trial, it must be authenticated by evidence sufficient to support a finding that the matter is what its proponent claims. MRE 901. Telegrams are not accepted as self-authenticating. However, a telegram may be authenticated if its contents and the surrounding circumstances indicate that the information it discloses is uniquely within the purported sender's knowledge or in reply to duly authenticated communications. MRE 901(4), *People v Adams,* 162 Mich 371, 385; 127 NW 354 (1910), *People v Rabin,* 317 Mich 654; 27 NW2d 126 (1947).

We find that the trial court abused its discretion by admitting the telegram without proper authentication. *Champion v Champion,* 368 Mich 84; 117 NW2d 107 (1962). However, since identification of

the assailant was not an issue and three people had witnessed the attack on the complainant, reversal is not required because the error was harmless beyond a reasonable doubt. *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972).

Defendant argues that testimony concerning the alleged drug scheme, the death threats, and his escapee status should have been barred by the "similar acts" statute, MCL 768.27; MSA 28.1050. Although the drug scheme and subsequent threats undoubtedly qualified for admission under the "similar acts" statute or MRE 404(b) as prior bad acts tending to establish motive, we agree that defendant's escapee status was not properly admitted under the "similar acts" statute. However, even granting that the admission of the latter testimony was error, in the light of the strength of the overwhelming evidence, we find no reasonable possibility that exclusion of such testimony would have altered the jury's verdict. *Robinson, supra,* 563, *People v Wilkins,* 82 Mich App 260; 266 NW2d 781 (1978), *rev'd on other grounds* 408 Mich 69; 288 NW2d 583 (1980), *People v Christensen,* 64 Mich App 23; 235 NW2d 50 (1975), *lv den* 397 Mich 839 (1976).

Relatedly, defendant argues that the complainant-wife's testimony regarding the alleged drug smuggling scheme and death threats was barred by the husband-wife privilege. In Michigan, this common-law privilege is codified by statute. The statute states in relevant part:

"A husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent, *except * * * where the cause of action grows out of a personal wrong or injury done by one to the other, * * ** nor shall either, during the marriage or afterwards, without the

consent of both, be examined as to any communication made by one to the other during the marriage * * *." (Emphasis added.) MCL 600.2162; MSA 27A.2162.

It is to be noted that two common-law privileges are codified into our statute: the "spousal privilege" and the "confidential communication" privilege. The "spousal privilege" applies to any testimony of a spouse without the consent of the other so long as the parties continue to be legally married at the time of the suit. It, however, is subject to expressed, enumerated exceptions. The "confidential communications privilege" applies, irrespective of the marital status of the parties at the time of the suit, to confidential communications made within the marital relationship. *People v Wadkins,* 101 Mich App 272, 282; 300 NW2d 542 (1980).

Defendant argues that his wife's testimony regarding his drug smuggling scheme and his death threats, even if admissible under the similar-acts statute, was barred by the above statute. Thus, defendant would read the privilege expansively in favor of one seeking to invoke the privilege.

Most recently, the United States Supreme Court reexamined the rule of spousal privilege. *Trammel v United States,* 445 US 40, 52; 100 S Ct 906; 63 L Ed 2d 186 (1980). Chief Justice BURGER, writing for the Court, stated:

"When one spouse is willing to testify against the other in a criminal proceeding—whatever the motivation—their relationship is almost certainly in disrepair; there is probably little in the way of marital harmony for the privilege to preserve. In these circumstances, a rule of evidence that permits an accused to prevent adverse spousal testimony seems far more likely to frustrate justice than to foster family peace."

The Court modified the rule in federal courts to allow the privilege to be exercised only by the witness spouse.

There is no question that the defendant could not have prevented the victim-wife from testifying regarding the drug scheme and death threats because the statute clearly provides an applicable, expressed exception to the spousal privilege: *i.e.,* where the cause of action grows out of a personal wrong or injury done by one to the other. *People v Sebring,* 66 Mich 705; 33 NW 808 (1887).

The language of the United States Supreme Court on this issue is quoted only for insight into the policy behind the spousal privilege. It bears on the issue here to the extent that the complainant should have been allowed, as she did, to testify to anything relevant to prove the charged offense. Therefore, any testimony that was relevant and not barred by the "similar acts" statute was permissible and should not have been barred by the spousal privilege. *Wadkins, supra,* 282.

The question is whether this testimony given by the victim-wife was barred as being a confidential communication. Although the exception permitting testimony where the personal offense is done by one spouse to the other is not expressly stated as applying to confidential communications, we agree with the reasoning and cases set forth in McCormick, Evidence (2d ed), § 84, p 170, that the exception also should be applied to confidential communications and that "[a]ny other result would, in principle, indeed be difficult to justify". Further, we note that threats of bodily harm are not confidential even though conveyed in secrecy. *People v Zabijak,* 285 Mich 164; 280 NW 149 (1938). Accordingly, we find no error.

Defendant next argues that the testimony re-

garding the contents of defendant's letters to the complainant violated the best evidence rule. MRE 1002. We reject this argument since neither the negligence nor bad faith of either the complainant or prosecutor caused the destruction of the letters.

The complainant had received various threatening letters from the defendant while he was incarcerated at Jackson prison. The complainant had saved these letters, or some of them. She moved several times while defendant was in prison, the last time after her residence had been ransacked after a breaking and entering. She testified that many of her papers and personal effects were strewn about on the floor and that she threw much of this out—including, apparently, the letters. Also, the witness never informed the prosecutor about the existence of the letters until the week immediately preceding trial.

Thus, the witness, not knowing that the letters were or would later be important, discarded them several months prior to trial and prior to having informed the police or prosecution about their very existence. We find these facts sufficient under MRE 1004 to allow the complainant to testify as to the contents of the letters. *People v Trombley,* 67 Mich App 88, 94; 240 NW2d 279 (1976), *lv den* 396 Mich 861 (1976).

The impeachment of defendant by evidence of three prior convictions does not merit extensive discussion. The trial court did not abuse its discretion in admitting evidence of the three prior convictions for impeachment purposes. *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974). The trial court recognized its discretion positively and found the probative value of the evidence to outweigh its prejudicial effects. *People v Worden,* 91 Mich App 666; 284 NW2d 159 (1979). The three admitted

convictions were not similar to the charged offense. Nor did the number of convictions rise to the level of prejudice encountered in *People v Bennett,* 85 Mich App 68; 270 NW2d 709 (1978). We find no error.

Further, no error requiring reversal was committed where the prosecutor asked the defendant on cross-examination about his drug use before and while in prison. The prosecutor was attempting to elicit testimony which was relevant and material to both complainant's and defendant's contrary testimony regarding whether he had requested his wife to smuggle narcotics into prison for him. As previously noted, this testimony had legal relevance to establish motive for the attack. *People v Walker,* 86 Mich App 155, 159; 272 NW2d 222 (1978), *People v Talaga,* 37 Mich App 100, 102-103; 194 NW2d 462 (1971). Moreover, and dispositive of the issue, the trial court promptly sustained the defense counsel's objection to this line of cross-examination. On the record, we find that the brief reference to defendant's taking of drugs did not deprive him of a fair trial.

The final error alleged involves the limiting instruction on the use of testimony of prior bad acts. Defendant complains that the following instruction should have specifically mentioned the drug scheme:

"You have heard evidence tending to show that the defendant was guilty of an offense for which *[sic]* is not on trial, such as leaving the place of incarceration. You are the only judges of whether to believe such testimony. However, should you believe such evidence you are cautioned that it is before you for a limited purpose. That is, for the purpose of determining if it tends to show either a motive for the commission of the crime charged or that the defendant specifically intended to murder his wife Brenda Thompson.

"This evidence must not be considered by you for any other purpose. You must not, for instance, regard this evidence as showing that the defendant is a person of bad character or that he has a disposition to commit crimes. You must not convict the defendant because you believe he is guilty of other improper conduct."

It is well-settled that a trial court has no duty to give a limiting instruction in absence of a request or objection to the final charge. *People v Chism,* 390 Mich 104, 120-121; 211 NW2d 193 (1973). We cannot tell from the facts presented to us whether defense counsel specifically objected to the instruction on the ground that the drug scheme and threats should have been mentioned. However, we find that the instruction was adequate to caution the jurors regarding the proper consideration to be given all other "bad acts" in evidence.

Affirmed.