PEOPLE v VIEAU

Docket No. 56409. Submitted August 18, 1983, at Grand Rapids.—
Decided August 20, 1984. Leave to appeal applied for.

Robert W. Vieau was convicted of first-degree murder, Cheboygan
Circuit Court, Joseph P. Swallow, J. At the trial, defendant's
wife was allowed to testify regarding the killing. The victim
was a man with whom defendant's wife was living at the time.
After shooting the victim, defendant shot and injured his wife,
for which he was charged with assault with intent to murder
his wife and was tried separately. Defendant appealed, alleging
*inter alia* that admission of his wife's testimony was error and
was precluded by the statute regarding the spousal privilege.
*Held:*

1. The trial court erred in holding that the wife's testimony
was admissible by reason of federal case precedent. The spousal
privilege in Michigan is governed by statute. Under a statutory
exception, however, the testimony was properly admitted be-
cause the crime against the third party was a part of the same
criminal transaction as that in which the wife was assaulted,
and thus grew "out of a personal wrong or injury done" by one
spouse to the other. The exception is applicable whether the
crimes against the third party and against the testifying spouse
are tried separately or together.

2. Defendant's other claims of error are without merit.

Affirmed.

M. E. DODGE, J., dissented. He would hold that the language
of the statutory exception should be construed narrowly and
that it precludes admission of the wife's testimony because the
state's cause of action for the killing of the third party did not
"grow out of" or in some way result from the assault on
defendant's wife. He would reverse and remand for a new trial.

REFERENCES FOR POINTS IN HEADNOTES
[1] 81 Am Jur 2d, Witnesses § 111.
[2, 3] 81 Am Jur 2d, Witnesses § 126.
Competency of one spouse to testify against other in prosecution for
offense against third party as affected by fact that offense against
spouse was involved in same transaction. 36 ALR3d 820.

OPINION OF THE COURT

1. CRIMINAL LAW — EVIDENCE — SPOUSAL IMMUNITY.

The admissibility of a person's testimony against his or her spouse is controlled by statute; generally, such testimony is inadmissible, but the rule is subject to certain specified exceptions (MCL 600.2162; MSA 27A.2162).

2. CRIMINAL LAW — EVIDENCE — SPOUSAL IMMUNITY — CRIME AGAINST THIRD PARTY.

A person may testify against his or her spouse in a case "where the cause of action grows out of a personal wrong or injury done by one to the other"; this exception to the rule of spousal immunity is applicable to the prosecution of a crime committed against a third person where it is part of the same criminal transaction as a crime committed against the testifying spouse, regardless of whether the crimes against the third person and the spouse are tried together or separately (MCL 600.2162; MSA 27A.2162).

DISSENT BY M. E. DODGE, J.

3. CRIMINAL LAW — EVIDENCE — SPOUSAL IMMUNITY — CRIME AGAINST THIRD PARTY.

*A wife should not be allowed to testify against her husband regarding the husband's killing of a third party, even though the husband also assaulted his wife and was charged for that crime as well as the murder; the state's cause of action for the murder of the third party did not "grow out of" the injury done to the wife within the meaning of the exception to the spousal immunity statute which allows a spouse to testify where the "cause of action grows out of a personal wrong or injury done by one to the other" (MCL 600.2162; MSA 27A.2162).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Joseph P. Kwiatkowski,* Prosecuting Attorney, and *Michael A. Nickerson,* Assistant Attorney General, for the people.

State Appellate Defender (by *Richard B. Ginsberg),* for defendant.

Before: DANHOF, C.J., and MacKENZIE and M. E. DODGE,* JJ.

PER CURIAM. After a jury trial, defendant was convicted of first-degree premeditated murder, MCL 750.316; MSA 28.548. He was sentenced to life imprisonment and appeals as of right.

Defendant was charged with the murder of Gary Williams. Defendant's wife, Sheryl Vieau, testified that she was living with Williams at the time of the alleged offense. The night before the killing, she began working at the Dixie Tavern in Mackinaw City. Defendant visited the tavern several times that evening in order to talk to her. On the night of the killing, defendant again came into the tavern five or six times. When defendant's wife left work, she discovered that one of the tires on the car loaned to her by Gary Williams was flat. All of the spare tires in the trunk of the car were also flat. Defendant walked by at that time and made a remark about the flat tire. It was his wife's opinion from the manner in which defendant made the remark that he had flattened the tire. She then telephoned Gary Williams and he agreed to come and pick her up. Defendant asked her if she would go with him to the Commodore Club. She told him that Gary was on his way to pick her up. Defendant said, "I'll get you. I have a gun in the car. I will wait for Gary on the highway if I have to, but I will get you". He then left.

When Gary Williams arrived, he took a tire out of the car he was driving and began to change the flat. Defendant pulled up in his car and said, "[d]on't move, boy, or I'll shoot you. Sheryl get out of the car or I'll kill him. Sheryl get out of the car". Defendant then fired several shots and Gary

* Circuit judge, sitting on the Court of Appeals by assignment.

Williams fell. About 15 seconds later, several more shots were fired and defendant's wife was injured.

Sheryl Vieau was married to defendant at the time of trial. Defendant claims that the court erred in admitting her testimony against the defendant at trial over defendant's spousal privilege objection. The trial judge held that the testimony was permissible under the rule adopted in *Trammel v United States,* 445 US 40; 100 S Ct 906; 63 L Ed 2d 186 (1980). On appeal, defendant claims that the trial judge erred by holding that the decision in *Trammel, supra,* precludes the application of the Michigan statute concerning spousal privilege, MCL 600.2162; MSA 17A.2162. We agree. The question of marital privilege in Michigan is clearly governed by statute and is unaffected by *Trammel, supra.* See *People v Wadkins,* 101 Mich App 272, 282-284; 300 NW2d 542 (1980); *People v Thompson,* 111 Mich App 324, 331; 314 NW2d 606 (1981); see also *People v Zabijak,* 285 Mich 164, 177; 280 NW 149 (1938).

Nevertheless, although the trial court erred in applying the modified federal common-law rule adopted in *Trammel, supra,* instead of the Michigan statute, we find that Sheryl Vieau's testimony was properly admitted. The Michigan spousal privilege rule is embodied in MCL 600.2162; MSA 27A.2162, which states in part:

"A husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent, *except* in suits for divorce and in cases of prosecution for bigamy, in cases of prosecution for a crime committed against the children of either or both, and *where the cause of action grows out of a personal wrong or injury done by one to the other.*" (Emphasis added.)

In *People v Love,* 127 Mich App 596, 602; 339 NW2d 493 (1983), this Court held that the statutory exception to spousal privilege in cases "where the cause of action grows out of a personal wrong or injury done by one to the other" applies to prosecution of a crime committed against a third person where it is part of the same criminal transaction as a crime committed against the testifying spouse. In the present case, defendant shot Williams at the same time and as part of the same transaction during which he also shot at Sheryl Vieau, for which defendant was separately charged with assault with intent to murder Sheryl Vieau. We recognize that *People v Love* differs factually from the instant case in that there the crime against the testifying spouse was charged and tried together with the crime against the third person. Here, the prosecutor's motion to consolidate the two cases was denied, and hence the crime against the third party, Williams, was tried separately. However, we deem the statutory exception applicable regardless of whether the crimes against the third person and the spouse are tried separately or together. *State v Briley,* 53 NJ 498, 507; 251 A2d 442 (1969), quoted with approval in *People v Love, supra,* p 601.

Defendant has raised a number of other claims on appeal, none of which merit substantial discussion. With regard to defendant's claim that the court erroneously instructed the jury as to consideration of lesser included offenses, defendant failed to object to the instruction, and consequently, we decline to address this issue as not preserved for appellate review. *People v Handley,* 415 Mich 356, 360; 329 NW2d 710 (1982); *People v Marland,* 135 Mich App 297; — NW2d — (1984).

We find no reversible error in the bailiff's off-

the-record communication to the jury, made pursuant to the trial judge's request and prior to commencement of deliberations, that the judge would not be giving any further instructions and that the jury could begin deliberations.

With regard to defendant's claims of improper prosecutorial argument, we find no impropriety requiring reversal of defendant's conviction.

We find no abuse of discretion in the trial judge's decision to admit evidence concerning a cut in the valve stem of the right rear tire of the car driven by Sheryl Vieau. We also find no deliberate suppression of evidence by the prosecution.

Lastly, we find that a reasonable jury could find the elements of premeditation and deliberation proved beyond a reasonable doubt.

Affirmed.

M. E. DODGE, J. *(dissenting)*. On appeal, the prosecutor urges this Court to follow *People v Love,* 127 Mich App 596; 339 NW2d 493 (1983), and hold that Sheryl Vieau's testimony came within one of the exceptions to the statutory spousal privilege rule.

Michigan's spousal privilege rule, MCL 600.2162; MSA 27A.2162, states in part:

"A husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent, except in suits for divorce and in cases of prosecution for bigamy, in cases of prosecution for a crime committed against the children of either or both, and *where the cause of action grows out of a personal wrong or injury done by one to the other."* (Emphasis added.)

In *Love, supra,* the defendant, his estranged wife and her fellow employee were in the fellow em-

ployee's car. The defendant allegedly shot and killed the fellow employee, then kidnapped his wife. In ruling that an exception to the statutory spousal privilege rule existed, this Court relied on the rationale used by the New Jersey Supreme Court in *State v Briley,* 53 NJ 498; 251 A2d 442 (1969):

"In *Briley,* relied upon by the trial court, the defendant husband shot and murdered a male companion of his estranged wife and then assaulted his wife with a gun. At that time, New Jersey had a statutory rule of evidence similar to Michigan's spousal privilege statute. New Jersey charged Briley with the murder of his wife's male companion and with an assault against his wife. The trial court compelled Briley's wife to testify regarding the murder charge as well as the assault against her over defendant's objection. The *Briley* Court held,

" 'If there is a single criminal event in which she and others are targets or victims of the husband's criminal conduct in the totality of the integrated incident and formal charges are made against the husband for some or all the offenses committed (one of which charges is for an offense against the spouse), the wife should be a competent and compellable witness against her husband at the trial of all the cases regardless of whether they are tried separately or in one proceeding. And, in this connection, it should be immaterial that the offense against the wife does not reach the same dimensions of criminality as it does against the third-party victim.' *Briley,* 53 NJ 507; 251 A2d 446.

"We find *Briley* persuasive." *Love, supra,* pp 600-601.

This Court also stated:

"The Legislature employed remarkably broad language in drafting the victim-spouse exception quoted above. Because the spousal privilege should be narrowly construed, the exceptions to the spousal privilege stated in the statute should be construed broadly. Therefore,

we hold that a crime committed against a third person as part of the same criminal transaction as a crime committed against a spouse 'grows out of a personal wrong or injury' done to the spouse and is therefore within the exception. This result is consistent with the policy behind the statute. Marital harmony will not be significantly decreased if the victim-spouse is required to testify on two charges arising from the same criminal transaction rather than merely one." *Love, supra,* p 602.

The Court noted that the position taken in *Briley* was in accord with the overwhelming weight of authority from other jurisdictions.

The exception to the statutory rule, the meaning of which was in dispute in *Love* and is in dispute here, is for testimony "where the cause of action grows out of a personal wrong or injury done by one to the other". To support the claim that the wife's testimony was admissible in this case, it is necessary to find that the state's cause of action against the defendant for the murder of Gary Williams grew out of a personal wrong or injury done by defendant to Sheryl Vieau. I cannot reach this conclusion based on an examination of the language and history of the statute.

The element of a "personal wrong or injury done by one to the other" is present here in the form of the assault upon Sheryl Vieau. Even using the broadest possible construction of the phrase "grows out of", however, I cannot conclude that the state's cause of action for the murder of Gary Williams grew out of the assault on Sheryl Vieau. The use of the phrase "growing out of" indicates that the cause of action must be, in some way, the result of the personal injury done by one spouse to the other. While the killing of Gary Williams may have grown out of defendant's intent to injure his wife, the state's cause of action for the killing did

not grow out of the injury. The people's cause of action for the assault against defendant's wife grew out of the wrong or injury done to her by the defendant, but the cause of action for the murder of a third person did not.

I think that the Michigan statute can be distinguished from the New Jersey statute interpreted in *Briley, supra.* In New Jersey, Rule 23(2), NJS 2A:84A-17(2), stated that the spouse of the accused in a criminal action shall not testify in such action "unless * * * the accused is charged with an offense against the spouse". The language used in the statute does not preclude the interpretation of it in *Briley, supra.* The accused in *Briley* was charged with an assault against his spouse, even though he was also charged with the murder of a third person. This broad reading of the statutory langauge of the relevant exception, with its concomitant refusal to imply any restrictions on it, may not have represented the Legislature's intent, but certainly did no violence to the Legislature's language. The same analysis cannot be made of the Michigan statute. To interpret it in the way that the New Jersey Court interpreted that state's statute in *Briley* would not only ignore the probable legislative intent, but do violence to the legislative language.

The majority has also ignored our own Supreme Court's interpretation of the exceptions to the spousal immunity statute. The most extensive discussion of the legislative intent behind the statute and the common-law principles upon which it is based appears in *People v Quanstrom,* 93 Mich 254; 53 NW 165 (1892). The statutory provision interpreted by the Court in *Quanstrom* remains virtually unchanged. Three exceptions have been added, applying in suits for divorce, prosecutions

for bigamy (effectively overruling *Quanstrom)*, and prosecutions for a crime committed against the children of either or both. The phrase this Court must interpret, "where the cause of action grows out of a personal wrong or injury done by one to the other", was interpreted in *Quanstrom.* The Court began by noting that the words "personal wrong or injury" were used "in a restricted sense". *Quanstrom, supra,* p 255. If the phrase had been used in its broadest sense, the Court stated, there would have been no necessity for providing for other exceptions.

The Court analyzed the statutory privilege as one embodying the common law. At common law, exceptions to the privilege were allowed "from the necessity of the case". Such necessity had been described by Lord Mansfield as "a particular necessity, as where, for instance, the wife would otherwise be exposed, without remedy, to personal injury".[1] The Court stated:

"The language of the rule at common law was as broad as the language 'personal injury' in our statute, and that language meant, and was held to mean, violence, either actual or constructive, to the person, and by a long line of decisions the wife was not allowed to give testimony in prosecutions for bigamy, or any other crime not involving personal violence or corporeal injury to her. the words 'wrong' and 'injury' are often used the one for the other. An injury to the person is a wrong, and a constructive injury to the person is also a wrong. A wrong is defined to be an injury, and an injury as a wrong. A personal wrong or injury is an invasion of a personal right; it pertains to the person, the individual. A cause of action growing out of a personal wrong is one designed to protect or secure some individual right. The right, as well as the wrong, must pertain to the person. It must be one that is

[1] *Bentley v Cooke,* 3 Doug 422, 424; 99 Eng Rep 729 (KB, 1784).

purely personal in its character, and in no sense can
the exception here be said to embrace public wrongs,
which are personal only in the sense that they wound
the feelings or annoy or humiliate, but inflict no injury
upon the person." *Quanstrom, supra,* pp 256-257.

The Court reviewed judicial decisions from other
jurisdictions and concluded that the exceptions to
Michigan's spousal immunity statute should be
construed narrowly, resulting in the exclusion of
the testimony in dispute. The Court stated:

"In the cases excluding the testimony of the wife, it is
held that the legislature had imported into the statute
the common-law rule, and that, before any departure
from that rule—affirmed, as it is, through the ages of
common law; a rule having its solid foundation, as is
said by Mr. Justice Brewer, in the best interests of
society—can be adjudged, the language declaring the
legislative will should be so clear as to prevent doubt as
to its intent and limit. The clear weight of authority
supports the principles laid down in these last-cited
cases, and is against the admissibility of the testimony.
If not a crime against her, it certainly is not a wrong
which is personal to her." *Quanstrom, supra,* p 260.

The Court in *Quanstrom* refused to extend the
statutory exceptions to the spousal immunity rule
except in cases where "the language declaring the
legislative will [is] so clear as to prevent doubt as
to its intent and limit". Although I recognize that
public policy considerations may support a broad
interpretation of the exceptions to the rule, I
cannot ignore the statute's history or its plain
terms. I cannot, therefore, subscribe to the liberal
interpretation of the statute adopted by the major-
ity. Because she was still married to defendant at
the time of trial, Sheryl Vieau's testimony should
have been excluded upon defendant's request. I
cannot conclude that the error in admitting her

testimony was harmless. The testimony was
clearly damaging. Her testimony provided evi-
dence strongly supporting the claim of premedita-
tion which was not provided by that of any other
witness.

I would reverse and remand for a new trial.